UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| JODI CAMPBELL, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 09-CV-2256 |
| RAP TRUCKING INC., a Massachusetts corporation, and RANDY H. GROSS, | ) |
| Defendants. | ) |

**OPINION**

This case is before the Court for ruling on various pre-trial motions in limine filed by the parties. This Court has carefully considered all of the motions, the responses to the motions, and the documents filed by the parties. Following this careful and thorough review, this Court rules as follows: (1) Plaintiff's Motion to Bar Certain Testimony of Sergeant Dittmer (#91) is GRANTED; (2) the First Motion in Limine (#93) filed by Defendants, RAP Trucking, Inc. ("RAP Trucking") and Randy H. Gross ("Gross"), is RESERVED in part, GRANTED in part, and DENIED in part; (3) the Defendants' Second Motion in Limine (#94) is DENIED; and (4) the Motion in Limine (#97) filed by Plaintiff Jodi Campbell ("Campbell") is RESERVED in part, GRANTED in part, and DENIED in part.

BACKGROUND

Plaintiff, a citizen of the State of Illinois, filed suit against Defendant Gross, a citizen of Florida, and RAP Trucking, a Massachusetts corporation with its principal place of business in Florida, over a vehicle collision that occurred in Ford County, Illinois. The amount in

1

controversy exceeds $75,000. According to the Complaint (#1) and Answer (#4) filed by the parties, the facts of the occurrence are as follows.

On February 10, 2008, at approximately 4:11 am, Defendant Gross was operating a semi truck and trailer owned by or leased to Defendant RAP northbound on Interstate Route 57 near mile post 258 in Ford County, Illinois. At said time and place Plaintiff was operating her Dodge Caravan minivan northbound on Interstate Route 57. At said time and place, Defendants' semi truck and trailer crashed into the rear end of Plaintiff's vehicle. Plaintiff's first count of the complaint alleges that the accident was the direct and proximate result of one or more of a combination of various acts or omissions on the part of Defendants, including: speeding, failure to reduce speed, failure to keep a proper lookout for other motor vehicles, and other unspecified negligence. Plaintiff filed an Amended Complaint (#33) adding a second count against Defendant RAP Trucking alleging negligent hiring, training and/or supervision of Defendant Gross in one or more of the following ways: (1) failure to perform an adequate background check which would have revealed an extensive criminal history; (2) failure to institute an adequate safety program of training and supervision of drivers, primarily with the purpose to avoid fatigued driving; (3) failure to implement a training program in maintaining accurate log book maintenance and supervision of the log books to ensure safety rules were complied with; and (4) failure to preserve the log books of Defendant Gross concerning the day of the accident and the preceding 60 days. Plaintiff alleges that as a proximate and direct result of Defendants' negligence, she has suffered various severe and permanent injuries. Plaintiff asks for a $10,000,000 judgment against Defendants.

Defendants deny Plaintiff's allegations of negligence. Defendants allege an affirmative defense in that Plaintiff: (1) entered the roadway from the shoulder without first determining that it was safe to do so; (2) entered the roadway from the shoulder without signaling; (3) entered the roadway at a time when it was unsafe to do so by reason of the relatively close proximity of Defendant Gross's vehicle; (4) operated her vehicle on the roadway without its running lights having been activated; (5) causing herself, by the consumption of alcoholic beverages, to have impaired senses of vision, depth perception, and judgment; (6) failing to keep her vehicle off of the roadway until such time as the effects of alcohol on her body had subsided; and (7) failing to keep a proper lookout for Defendant Gross's vehicle. Defendants argue that Plaintiff contributed in whole or in part to the injuries of which she complains and her recovery of damages should be barred or diminished accordingly.

**MOTION TO BAR CERTAIN TESTIMONY OF SERGEANT DITTMER**

On July 29, 2011, Plaintiff filed a Motion to Bar Certain Testimony of Illinois State Police Sergeant Dittmer (#91) and a Memorandum in Support (#92) of the Motion. Specifically, this Motion sought to bar Sergeant Dittmer's reconstruction opinion that the Plaintiff's minivan was pulling onto the highway from the shoulder at the time of the accident. On August 15, 2011, Defendants filed a Response (#106) in which they confessed the motion. As this Court agrees with the Plaintiff that Sergeant Dittmer's testimony should be barred as the opinion is not supported by a recognized scientific basis, Plaintiff's Motion to Bar Certain Testimony of Illinois State Police Sergeant Dittmer (#91) is GRANTED.

## MOTIONS IN LIMINE

### I. STANDARD

The "motion in limine is an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings." Jonasson v. Lutheran Child & Family Servs., 115 F.3d 436, 440 (7th Cir. 1997). "Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." Luce v. United States, 469 U.S. 38, 41 n.4 (1984). District courts have "broad discretion in ruling on evidentiary questions during trial or before on motions *in limine*." Jenkins v. Chrysler Motors Corp., 316 F.3d 663, 664 (7th Cir. 2002). A motion in limine "performs a gatekeeping function and permits the trial judge to eliminate from further consideration evidentiary submissions that clearly ought not be presented to the jury because they clearly would be inadmissible for any purpose." Jonasson, 115 F.3d at 440. Therefore, the moving party bears the burden of establishing that the evidence is not admissible for any purpose. Mason v. City of Chicago, 631 F. Supp. 2d 1052, 1056 (N.D. Ill. 2009). Unless this high standard is met, rulings on evidentiary matters must be deferred until trial so that issues of foundation, relevance and prejudice may be resolved in the proper context. Mason, 631 F. Supp. 2d at 1055-56; Townsend v. Benya, 287 F. Supp. 2d 868, 872 (N.D. Ill. 2003); see also Jonasson, 115 F.3d at 440.

### II. DEFENDANTS' MOTIONS IN LIMINE

Defendants included 16 requests in their First Motion in Limine (#93) and one request in their Second Motion in Limine (#94). The Plaintiff filed a combined Response to the First and Second Motion (#109). In their First Motion, Defendants first asked this Court to bar the

4

Plaintiff from presenting any evidence that Defendant Gross may have been charged or convicted of soliciting for prostitution or lewdness in Florida at any time more than 10 years ago. Defendants next asked this Court to bar any evidence that Gross may have been charged with or convicted of procuring a minor for prostitution in Florida at any time more than 10 years ago. Defendants' sixth request is to bar the fact that Defendant Gross has been identified as a sexual offender, sexual predator, or any similar status. Plaintiff objects to each of these requests on the basis that this evidence is relevant to Plaintiff's negligent hiring claim against Defendant RAP Trucking. Under Illinois law, plaintiffs are required to prove each of the following elements to establish a claim for negligent hiring:

> (1) that the employer knew or should have known that the employee had a particular unfitness for the position so as to create a danger of harm to third persons; (2) that such particular unfitness was known or should have been known at the time of the employee's hiring or retention; and (3) that this particular unfitness proximately caused the plaintiff's injury."

Helfers-Beitz v. Degelman, 939 N.E.2d 1087, 1091 (Ill. App. Ct. 2010). Based on the elements required for a negligent hiring claim, this Court disagrees that conduct relating to prostitution and status as a sexual offender, which is unrelated to the operation of a motor vehicle, is probative to possible negligence in hiring a tractor-trailer operator. Furthermore, the fact that the charges or convictions and status as a sexual offender involve a defendant in this case–Defendant Gross–is highly prejudicial and substantially outweighs any arguable probative value of this evidence. Accordingly, the Defendants' first, second, and sixth requests are all GRANTED.

Defendants' third request is to bar any suggestion by any witness that Gross spent time with a prostitute at any time. In her Response, the Plaintiff concedes that this request should be granted. Defendants' third request is GRANTED.

For their fourth request, Defendants asked this court to bar evidence that Gross took a cash advance in Effingham, Illinois, on February 9, 2008. Defendants argue that this evidence has no relevance to the issues of the case and is concerned that Plaintiff will introduce the evidence as a means to speculate on Defendant Gross's use of a prostitute with the funds received. In her Response, Plaintiff argues that this cash advance is a relevant part of the chronology of events leading up to the accident in question. This Court agrees that this evidence is relevant to the time line leading up to the accident, and further finds that there is no basis for limiting such evidence for the purpose of establishing the chronology of events. Nevertheless, any speculation as to how this money was spent would be improper as it lacks probative value. Defendants' fourth request is DENIED.

Defendants' fifth request is to bar any evidence relating to the fact that Defendant Gross may have been charged, convicted or lost positions of employment by reason of his failure to report a change of address. Plaintiff, in her Response, argues that this evidence is relevant to her negligent hiring claim against Defendant RAP Trucking. This Court fails to find any relevance of this evidence to a negligent hiring claim, as there is no rational argument that Defendant Gross's "unfitness" that might be demonstrated by his failure to report his address as required by a court order has any causal connection with Plaintiff's injury. See Degelman, 939 N.E.2d at 1091. Accordingly, Defendants' fifth request is GRANTED.

Defendants' seventh request is to bar the fact that Defendant Gross may have been charged or arrested for any crime if there is no proof that Defendant Gross was actually convicted of that particular crime. In her Response, the Plaintiff does not address this request specifically, however groups this request with others, arguing that this fact is probative as to

Plaintiff's negligent hiring, training and/or supervision claim against Defendant RAP Trucking. The broad wording of this request makes it difficult to make a similarly broad determination, however an arrest or charge relating to Defendant Gross's driving history could be relevant to Plaintiff's claim against Defendant RAP Trucking, even if it did not result in a conviction, but any other arrest or charge not related to Gross's driving history would not be relevant to the Plaintiff's claim against RAP Trucking. Therefore, Defendants' seventh request is DENIED as to any arrests or charges relating to Defendant Gross's driving history that did not result in a conviction; and is GRANTED as to any arrests or charges related to any other criminal activity in Defendant Gross's background that did not result in a conviction.

Defendants' eighth request is to bar evidence that Defendant Gross might have been convicted of driving under the influence of alcohol in Pennsylvania in 1990. Defendants argue that this was not a felony, even if there was a conviction, and that there is no evidence that Defendant Gross consumed any alcohol prior to the accident. In her Response, the Plaintiff argues that this conviction is relevant to the negligent hiring claim against Defendant RAP Trucking. This Court fails to find the relevance of this evidence to the negligent hiring claim alleged in this particular case, as the Plaintiff does not allege that the accident was caused by Defendant Gross's intoxication. Although it is true that this conviction would demonstrate a potential unfitness relating to a propensity to drive while intoxicated that RAP Trucking should have known of, a negligent hiring claim requires that the particular unfitness also proximately caused the Plaintiff's injury, which has not been alleged in this case. See Degelman, 939 N.E.2d at 1091. Therefore, Defendants' eighth request is GRANTED.

Defendants' ninth request is to bar evidence that Defendant Gross was charged or convicted in Pennsylvania for making false reports to law enforcement. In her Response, the Plaintiff argued that this evidence is relevant to her negligent hiring claim against Defendant RAP Trucking. Once again, this Court fails to find the relevance of such conduct by Defendant Gross in regards to a negligent hiring claim, as untruthfulness, which is the "unfitness" demonstrated by this behavior, certainly did not proximately cause Plaintiff's injury. See Degelman, 939 N.E.2d at 1091. Accordingly, Defendants' ninth request is GRANTED.

Defendants' tenth request is to bar testimony that Defendant Gross was charged or convicted in Pennsylvania for "making false reports to law enforcement authorities, altered, forged or counterfeit documents and plates, open lewdness, unauthorized transfer or use of registration, operation of vehicle without certificate of inspection and/or driving while operating privilege is suspended or revoked." Plaintiff, in her response, generally argues that this evidence is relevant to her negligent hiring claim against Defendant RAP Trucking. This Court finds that such conduct is not relevant to the negligent hiring claim in this case, as the unfitness potentially demonstrated by any of these particular actions by Defendant Gross have not been alleged to have caused the Plaintiff's injury, which is a required element of a negligent hiring claim. See Degelman, 939 N.E.2d at 1091. Defendants' tenth request is GRANTED.

Defendants' eleventh request is to bar any testimony as to whether or not Defendant Gross spent any time in Nashville, Tennessee, in the course of his delivery. In her Response, the Plaintiff concedes this request, thus Defendants' eleventh request is GRANTED.

Defendants' twelfth request is to bar testimony by George P. Huston ("Huston") as to his opinion that the log books of Defendant Gross were destroyed because they contained

information to implicate Defendant Gross in the accident. In her Response, the Plaintiff argues that Huston's opinion as to the motivation for destroying log books is based on his training and experience in the trucking and transportation industry, and thus he is qualified as an expert in regard to this issue. This Court disagrees that Huston's expertise qualifies him to opine as to the motivations of Defendant RAP Trucking in destroying the log books after six months. On the other hand, if Huston is later determined to be qualified as an expert on the trucking and transportation industry, he would be allowed to testify as to whether it is common practice to retain log books beyond the required six-month period when an accident has occurred. In summary, Huston is permitted to testify as to the common practice in the industry regarding retention of log books after accidents, but is not permitted to provide his opinion as to the reasonableness or motivations for Defendant RAP Trucking's destruction of the log books in this case. Accordingly, Defendants' twelfth request is GRANTED.

Defendants' thirteenth request is to bar any evidence relating to Defendant RAP Trucking's safety ratings. In her Response, the Plaintiff argues that evidence of RAP Trucking's safety ratings is admissible pursuant to Federal Rules of Evidence 406, as evidence of the habit and routine practice of RAP Trucking. Plaintiff argues that the relevance of such evidence is that a poor rating of driver fatigue is relevant to the training and supervision by RAP Trucking over its drivers, including Defendant Gross. This Court agrees with the Plaintiff that the safety ratings are permissible habit evidence of RAP Trucking under Rule 406 to prove that RAP Trucking might be lacking in its supervision and training of employees. See Fed. R. Evid. 406. Under Illinois common law, an employer may be liable for injuries resulting to third persons for negligent training or supervision of an employee if the plaintiff can establish "that the employer

9

knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the employer, having this knowledge, failed to supervise the employee adequately, or take other action to prevent the harm." Doe v. Brouillette, 906 N.E.2d 105, 115-16 (Ill. App. Ct. 2009) (internal quotations omitted). Although the Defendant is correct that poor safety ratings do not establish that Defendant Gross himself behaved in a dangerous manner, the poor safety ratings are potentially probative to the issue of whether RAP Trucking supervised their employees adequately or took other action to prevent the harm suffered by the Plaintiff. Nevertheless, unless the Plaintiff can actually present any evidence that RAP Trucking "knew or should have known" that Defendant Gross himself was behaving in a dangerous or incompetent manner, the probative value of the safety ratings have the potential to be substantially outweighed by the danger of misleading the jury. Therefore, Defendants' thirteenth request is RESERVED.

Defendants' fourteenth request is to bar any testimony by Amy Adams ("Adams"), a rebuttal witness for the Plaintiff, regarding the personnel file of Defendant Gross, on the basis that such evidence is not relevant to the claims in this case. In her Response, the Plaintiff concedes that the personnel file is not relevant to Defendant Gross's negligence, but argues that it is relevant to her claims against Defendant RAP Trucking for negligent hiring, training and/or supervision of Defendant Gross. This Court agrees that the following matters contained in Adams' review of the personnel file are ***potentially*** relevant to Plaintiff's negligent hiring, training and/or supervision claim against Defendant RAP Trucking: (1) that the file contained no evidence of any employment background check performed by Defendant RAP Trucking in regards to Defendant Gross; (2) that there was no transcript of Defendant Gross's driving record;

10

(3) that there was no review of Defendant Gross's driving record or meetings with him regarding his driving record; and (4) that RAP Trucking was in violation of the Federal Motor Carrier Safety Regulations. However, as it is not yet clear that the Plaintiff will be able to offer any evidence that Defendant Gross behaved in a dangerous or otherwise incompetent manner during his employment with RAP Trucking or that any particular unfitness that might have been discovered by RAP Trucking actually caused the Plaintiff's injury, it is not yet clear whether the probative value of this testimony will exceed the danger of misleading the jury as to the claims in this case. Therefore, as to these potentially relevant matters, this Court reserves its ruling on these portions of Adams' testimony. Adams' opinion that log books should be retained in the case of accidents involving serious injuries or death is admissible in accordance with this Court's previous discussions of testimony relating to the log books and therefore the motion in limine in regards to this testimony is denied. On the other hand, the remainder of the content of Adams' report which was attached to Defendants' motion, specifically paragraphs No. 1, 5, and the fatigue-driving rating from a time period after the collision, is barred because the findings are not probative to the negligent hiring, training and/or supervision claim. Accordingly, Defendants' fourteenth request is RESERVED in part, DENIED in part, and GRANTED in part.

Defendants' fifteenth request is to bar any suggestion that the Defendants are insured for any claim involved in this case. Defendants' sixteenth request is to bar any argument suggesting that the jury put itself in Plaintiff's position or situation. In her Response, the Plaintiff concedes that these requests should be granted. Therefore, Defendants' fifteenth and sixteenth requests are GRANTED.

In the Defendants' Second Motion in Limine (#94), the Defendants asked this Court to

bar any evidence, specifically during the liability portion of the bifurcated trial, as to the injuries or damages sustained by the Plaintiff in the accident. Defendants offer to stipulate that Plaintiff, as a result of the injuries sustained in the accident, has a loss of memory as to the accident itself and the events preceding the accident. In her Response, Plaintiff argues that evidence relating to certain injuries suffered by the Plaintiff are relevant to the issue of liability and the proposed stipulation fails to adequately address these relevant issues. Specifically, Plaintiff argues that the following injuries are relevant for the following reasons: (1) the bladder injury is an injury that occurs when the bladder contains urine, thus evidence offered as to this injury is circumstantial evidence that Plaintiff had not already stopped on the side of the road to relieve herself at the time of the collision; (2) the brain injuries are relevant to the application of the Dead-Man's Act and explain Plaintiff's lack of memory of the accident; and (3) the brain injuries are also relevant to explain Plaintiff's behavior in the emergency room after the accident. This Court agrees with the Plaintiff that the bladder and brain injuries are relevant to issues in dispute during the liability portion of the trial. Further, this Court concludes that the proposed stipulation by the Defendants is insufficient to adequately address *all* potentially probative uses of the injuries suffered by the Plaintiff in the accident (even if it might have been sufficient as to the application of the Dead-Man's Act). Defendants' Second Motion in Limine (#94) is DENIED.

### III. PLAINTIFF'S MOTION IN LIMINE

Plaintiff included 19 requests in her Motion in Limine (#97), and the Defendants filed a Response to the Motion (#111). Plaintiff first asked this Court to bar any commentary by defense counsel immediately preceding a question or following an answer. In its Response, Defendants argue that this request is vague and overbroad and should be denied. This Court

agrees with the Defendants that this request is vague and will deal with such commentary by either party's counsel at trial in the proper context. Plaintiff's first request is DENIED.

Plaintiff's second request is to bar testimony by Defendant Gross relating to the accident pursuant to the Illinois Dead-Man's Act. Plaintiff's third request is to bar testimony by third parties as to statements by Defendant Gross relating to the accident. Plaintiff's fourth request is to bar any testimony as to the content of Defendant Gross's driver log books. Plaintiff's fifth request is to bar testimony by Illinois State Trooper Dittmer as to the direction of travel of the Plaintiff's minivan at the time of the accident. Plaintiff's sixth request seeks to bar certain testimony by Defendants' expert Kevin Johnson. Plaintiff's seventh request seeks to bar certain testimony by Defendants' expert witness, Dr. Michael Mullins. Plaintiff has previously made each of these requests in separate motions filed with this Court. Each of these requests will be resolved by this Court pursuant to the relevant separate motions. As such, Plaintiff's second, third, fourth, fifth, sixth and seventh requests are RESERVED.

Plaintiff's eighth request is to bar evidence that there was cannabinoid detected in Plaintiff's urine in the emergency room after the accident. Although the Plaintiff has already filed a Motion to Bar Testimony of Dr. Michael Mullins (#80) in regards to Dr. Mullins' opinion of the likelihood that the Plaintiff was suffering from the effects of cannabinoid based on its presence in her blood at the time of the accident, this request by the Plaintiff is to bar evidence that cannabinoid was in fact detected in the Plaintiff's blood after the accident. In its Response, the Defendants simply referred to their prior response to the Motion to Bar Dr. Mullins' opinion regarding the presence of the cannabinoid, and did not respond to the request to bar the blood test results. As the Defendants' expert witness Dr. Mullins acknowledges, the presence of

13

cannabinoid in Plaintiff's urine after the accident does not establish that Plaintiff was suffering from its effects at the time of the accident, as the presence establishes simply that Plaintiff was exposed to cannabis within two or three days of the accident. In the absence of other proposed testimony establishing that Plaintiff was actually suffering from the effects of cannabis at the time of the accident, the limited probative value from the presence of cannabinoid in Plaintiff's urine is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403; See Chesler v. Trinity Industries, Inc., 2002 WL 1822918, at *1 (N.D. Ill. 2002). Plaintiff's eighth request is GRANTED.

Plaintiff's ninth request is to bar evidence that Plaintiff consumed alcohol earlier in the evening of the accident on the basis that such evidence is irrelevant as there is no evidence that alcohol consumption caused Plaintiff to negligently operate her vehicle. In its Response, the Defendants argue that the Plaintiff's consumption of alcohol and intoxication at the time of the accident is relevant to the possible cause of the accident. This Court agrees with the Defendants that the Plaintiff's consumption of alcohol is certainly relevant to her possible contributory negligence in causing the accident, which the jury could infer from the circumstances of the accident. Although evidence of alcohol consumption by itself may be inadmissible, in this case there was a blood-alcohol test conducted after the accident in which the Plaintiff's blood alcohol content was well over the legal limit, which supports a presumption that Plaintiff was intoxicated at the time of the accident. See Petraski v. Thedos, 887 N.E.2d 24, 31 (Ill. App. Ct. 2008). Plaintiff's ninth request is DENIED.

Plaintiff's tenth request is to bar evidence that Plaintiff may have had sexual intercourse earlier in the evening of the accident. Plaintiff's eleventh request is to bar evidence that the

Plaintiff had a condom in her vagina when she was examined in the emergency room shortly after the accident. Plaintiff's twelfth request is to bar evidence that Plaintiff had writing by members of a band on her chest at the time of the accident. In its Response, the Defendants concede that these requests should be granted. Accordingly, Plaintiff's tenth, eleventh and twelfth requests are GRANTED.

Plaintiff's thirteenth request is to bar evidence that some or all of Plaintiff's health care was rendered at a discount rate as a result of contracts with insurance providers and Medicare. In its Response, the Defendants argue, without providing any case support, that they should be able to argue that amounts charged for the services are arbitrary and unreasonable given the routine and customary practice of the health care providers to accept as payment in full amounts less than charged. Although Illinois common law provides that a plaintiff is entitled to recover the full billed amount, not simply the amount actually paid, defendants are allowed to challenge the reasonableness of the amounts charged for the services. Wills v. Foster, 892 N.E.2d 1018, 1031-33 (Ill. 2008). However, defendants are not allowed to introduce evidence of the actual amount for which a plaintiff's bills are settled. Id. at 1033. This Court will therefore interpret Plaintiff's request to simply ask to bar evidence of the discount rate actually paid, and the source of the payment of Plaintiff's medical bills–as such, this request is GRANTED.

Plaintiff's fourteenth request is to bar evidence that there have been collateral source payments of Plaintiff's expenses. Plaintiff's fifteenth request is to bar evidence of Plaintiff's financial circumstances or that the Plaintiff has received public aid. In its Response, the Defendants concede that these requests should be granted. Accordingly, Plaintiff's fourteenth and fifteenth requests are GRANTED.

Plaintiff's sixteenth request is to bar evidence that the Plaintiff was arrested and ticketed as a result of the incident in question, on the basis that the charge was dismissed and stricken after Plaintiff's compliance with court ordered supervision. In its Response, the Defendants argue that Plaintiff's criminal guilty plea to driving under the influence of alcohol on the night of the accident constitutes a judicial admission that is admissible as an admission against interest in this civil proceeding. As this is a federal diversity case, this Court adheres to Illinois law in determining the effect of a guilty plea on a civil case. Country Mutual Ins. v. Duncan, 794 F.2d 1211, 1212 (7th Cir. 1986). Plaintiff's guilty plea on November 18, 2008 operates as an admission of the fact that she was driving while intoxicated at the time of the accident in question under Illinois law. See e.g., Brown v. Green, 738 F.2d 202, 206 (7th Cir. 1984) (citing Illinois cases). Although the subsequent dismissal of the charge based on Plaintiff's compliance with the court ordered supervision would preclude use of a *conviction*, such a dismissal has no effect on the admissibility of the guilty plea itself. See e.g., Smith v. Sheahan, 959 F.Supp. 841, 844 (N.D. Ill. 1997). Therefore, Plaintiff's sixteenth request is DENIED.

Plaintiff's seventeenth request is to bar evidence of the circumstances under which the Plaintiff's attorney was retained or the fees or contingency contract under which the attorney has been retained. Plaintiff's eighteenth request is to bar testimony that any recovery by the Plaintiff is not subject to federal income taxes. Plaintiff's nineteenth request is to bar Defendants from arguing that the Plaintiff has asked to be awarded a greater sum of money than Plaintiff actually expects to be awarded. In its Response, the Defendants concede that each of these requests should be granted. Accordingly, Plaintiff's seventeenth, eighteenth and nineteenth requests are GRANTED.

IT IS THEREFORE ORDERED THAT:

(1) Plaintiff's Motion to Bar Certain Testimony of Sergeant Dittmer (#91) is GRANTED.

(2) Defendants' First Motion in Limine (#93) is RESERVED in part, GRANTED in part, and DENIED in part.

(3) Defendants' Second Motion in Limine (#94) is DENIED.

(4) Plaintiff's Motion in Limine (#97) is RESERVED in part, GRANTED in part, and DENIED in part.

ENTERED this 7th day of September, 2011.

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE